UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAZERO ALVAREZ | CIVIL ACTION |
| VERSUS | NO: 11-2836 |
| VALERO REFINING-NEW ORLEANS, LLC, VALERO ENERGY CORP., and XYZ INSURANCE CO. | SECTION: R |

**ORDER AND REASONS**

Defendant Valero Refining-New Orleans ("VR-NO") moves for summary judgment against plaintiff Lazero Alvarez. Because plaintiff is barred from asserting claims against VR-NO in tort, the Court grants defendant's motion for summary judgment.

**I.  BACKGROUND**

**A.  The Alleged Injury**

On October 20, 2010, plaintiff was performing scaffolding work at the VR-NO refinery in St. Charles Parish, Louisiana when, he alleges, he was exposed to an unauthorized release of toxic chemicals.[1] In his complaint against VR-NO, Valero Energy Corporation, and an unnamed insurance company, plaintiff alleges that because of the exposure, he suffered damages including medical costs, lost wages, physical pain and suffering, and

---

[1]  R. Doc. 1-1 at 2-5.

emotional distress.[2] Plaintiff's claims sound in negligence, intentional tort, and strict liability.[3]

**B.    The Contract Between VR-NO and Excel**

At the time of his toxic exposure, plaintiff was working as an employee of Safway Services, Inc. Safway, a scaffold services provider, was working at the VR-NO refinery pursuant to a subcontract with Excel Contractors, Inc,[4] which had contracted with VR-NO to provide various mechanical construction services at its St. Charles Parish refinery.[5] The Excel-VR-NO contract provides, in relevant part:

> Only and strictly with regard to claims, demands, suits and other liabilities by employees of Contractor [Excel] or any of Contractor's subcontractors [e.g. Safway] against Owner [VR-NO], in connection with Work performed in the State of Louisiana, the parties acknowledge that performance of any Work by Contractor constitutes their recognition and agreement that a statutory employer relationship as envisioned by as envisioned by La. R.S. § 23:1061(A), as amended by Act 315 of 1997, exists between the Contractor and Owner. Such statutory employer relationship applies to Contractor's direct, borrowed, special or statutory employees. Further, the parties acknowledge that the Work to be performed under this Agreement is an integral part of, or

---

[2]    *Id.* at 5-8.

[3]    *Id.* at 5-7.

[4]    R. Doc. 15, Ex. A at 2; R. Doc. 16, Ex. 3 at 5, 12, 19, 20.

[5]    R. Doc. 16, Ex. 1.

2

essential to, the ability of the Owner to generate its own goods, products or services.[6]

**C.     The Contract Between VR-NO and Safway**

Also at the time of plaintiff's exposure, Safway was party to a separate agreement with the Valero companies (including VR-NO).[7] The Safway-VR-NO contract states: "All Work at all Facilities shall be performed upon and subject to the terms and conditions of this Agreement."[8] "Facilities" includes VR-NO's St. Charles refinery.[9]

The contract also specifies:

> Only and strictly with regard to claims, demands, suits and other liabilities by employees of Contractor [Safway] or any of Contractor's subcontractors against Owner [VR-NO], in connection with Work performed in the State of Louisiana, the parties acknowledge that performance of any Work by Contractor constitutes their recognition and agreement that a statutory employer relationship as envisioned by La. R.S. § 23:1061(A), as amended by Act 315 of 1997, exists between the Contractor and Valero. Such statutory employer relationship applies to Contractor's direct, borrowed, special or statutory employees. Further, the parties acknowledge that the Work to be performed under this Agreement is an integral part of, or essential to, the ability of Valero to generate its own goods, products or services.[10]

---

[6]     *Id.* at 22.

[7]     R. Doc. 6, Ex. 1;   R. Doc. 15, Ex. A.

[8]     R. Doc. 6, Ex. 1 at 3.

[9]     *Id.* at 29, 32.

[10]    *Id.* at 222-23. The Multi-Site Work Agreement provides: "The term 'Valero', when used herein, shall mean either the Valero Companies or the affected Valero Entity, as context may

3

### D. VR-NO's Motion for Summary Judgment

VR-NO now moves for summary judgment.[11] It contends that it was plaintiff's statutory employer under the provisions of the contract between VR-NO and Excel and the contract between VR-NO and Safway. As such, VR-NO argues that it is entitled, under La. R.S. § 23:1061, to the exclusive remedy provisions of Louisiana's workers' compensation scheme, and that plaintiff is consequently barred from pursuing his claims in tort. Plaintiff does not oppose the motion.

### II. STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in

---

require." *Id.* at 1. VR-NO is specifically listed as a "Valero Entity," *id.*, and as the owner of the St. Charles Refinery. *Id.* at 32.

[11] R. Doc. 15.

4

the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, *Fed. Prac. and Proc. Civ.* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

5

of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

## III. DISCUSSION

Notwithstanding VR-NO's contract with Safway, plaintiff was actually working at the refinery pursuant to the subcontract between his employer and Excel, the latter having contracted directly with VR-NO.[12] Thus, in order to determine plaintiff's rights against VR-NO, the Court will examine the agreement between VR-NO and Excel.

### A. Tort Immunity for Statutory Employers

---

[12] R. Doc. 15, Ex. A at 2.

In exchange for an obligation to provide workers' compensation benefits to their injured employees, employers receive immunity from suits in tort arising from accidental injuries sustained by their employees:

> Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages[.]

La. R.S. § 23:1032(A)(1)(a). La. R.S. § 23:1061 extends the employer's compensation obligation and its corresponding tort immunity to statutory employers:

> Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him[.] ... For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

La. R.S. § 23:1061(A)(1).

The statute sets forth two specific circumstances under which a statutory employer relationship arises. First, La. R.S. § 23:1061(A)(2) creates a statutory employer relationship "whenever

7

the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer." La. R.S. § 23:1061(A)(2). In this case, VR-NO contracted with Excel to perform mechanical construction work, and Excel then subcontracted with Safway to perform a portion of that work. As plaintiff was a Safway employee performing work under the subcontract when he suffered the toxic exposure, plaintiff was the statutory employee of Excel under the very terms of La. R.S. § 23:1061(A)(2).

The second situation in which a statutory employer relationship is recognized is set forth in La. R.S. § 23:1061(A)(3). Under that provision, except in the two contractor situation, a statutory employer relationship may arise only when there is a written contract between the principal and the employee's immediate employer or his statutory employer that specifically recognizes the principal as the statutory employer. La. R.S. § 23:1061(A)(3). In that case, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." *Id.* A contractor's employee may rebut the presumption, but "only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or

8

services." *Id.* Here, the agreement between Excel and VR-NO designated Excel's employees, *including its statutory employees*, as statutory employees of VR-NO. Because plaintiff was a statutory employee of Excel, the Excel-VR-NO contract gives rise to a rebuttable presumption that VR-NO was plaintiff's statutory employer and therefore immune from plaintiff's tort claims.

To overcome the presumption and maintain his action against VR-NO, plaintiff must demonstrate that his work was not "an integral part of or essential to" VR-NO's ability to generate its goods, products, or services. La. R.S. § 23:1061(A)(3). He did not even attempt to meet his burden and rebut the presumption of a statutory employer relationship, as he failed to respond to defendant's motion for summary judgment. Had he so attempted, his task would have been a difficult one. The agreement specifically defined Excel's work as "an integral part of, or essential to, the ability of the Owner [VR-NO] to generate its own goods, products or services." Courts have "construed the statute liberally to find even the most peripheral tasks by a contractor for its statutory employer to be essential and integral to the employer's ability to generate its services." *Hodges v. Mosaic Co.*, 2007 U.S. Dist. LEXIS 49065, at *7-8 (E.D. La. 2007); *see also Johnson v. Tenn. Gas Pipeline Co.*, 99 F. Supp. 2d 755 (E.D. La. 2000) (finding that contracted catering services on board an oil and gas compressor facility were integral and essential to

9

the statutory employer's ability to operate its facility). At the time of his alleged toxic exposure, plaintiff was building scaffolds to be used in the construction of a mechanical unit at the VR-NO refinery, and it stands to reason that under a liberal interpretation of the statute, such work was an integral part of or essential to VR-NO's ability to generate its refined petroleum products. *See, e.g., Hodges*, 2007 U.S. Dist. LEXIS 49065, at *8 (finding that plaintiff failed to rebut presumption of statutory employer relationship by demonstrating that his work installing electrical scaffolding was not an integral part of and essential to defendant chemical manufacturer's ability to produce chemicals); *Blakely v. CITGO Petroleum Corp.*, 737 F. Supp. 2d 599, 606 (W.D. La. 2010) (finding that plaintiff failed to rebut presumption of statutory employer relationship by demonstrating that his work in support of an oil spill clean-up effort was not an integral part of and essential to defendant refinery's ability to generate its product); *Everett v. Rubicon, Inc.*, 938 So. 2d 1032, 1040 (La. App. 1st Cir. 2006) (finding that plaintiff failed to rebut presumption of statutory employer relationship by demonstrating that an amine brine receiver, on which plaintiff had been working at the time of injury, was not essential to defendant chemical plant's ability to generate chemicals). Because he has failed to overcome the presumption, plaintiff is

barred from seeking a remedy in tort against VR-NO for his accidental injuries.

**B.    Intentional Act Exception Not Applicable**

The only way plaintiff would not be precluded from pursuing claims in tort is if he were able to show that his injuries arose by way of an intentional act. *See* La. R.S. § 23:1032(B) (providing an exception from the exclusive remedy provision for liability arising from an intentional act); *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 210 (La. 1999). "The words 'intentional act' mean the same as 'intentional tort' in reference to civil liability." *Bazley v. Tortorich*, 397 So. 2d 475, 480 (La. 1981). Thus, when the employee's injury is proximately caused by the employer's intentional tortious act, the employee may sue in tort to recover beyond workers' compensation benefits. *Reeves*, 731 So. 2d at 210.

To invoke the intentional act exception, the person acting and injuring must either "consciously desire[] the physical result of his act, whatever the likelihood of that result happening from his conduct," or "know[] that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley*, 397 So. 2d at 481; *see also White v. Monsanto Co.*, 585 So. 2d 1205, 1208 (La. 1991); *Reeves*, 731 So. 2d at 211. Intent refers to the consequences of

11

an act rather than to the act itself, and "only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional." *White*, 585 So. 2d at 1208.

Plaintiff alleges that the chemical release was caused "by the fault, willful misconduct and intentional acts and omissions ... of defendants[;]" that VR-NO acted "without due regard for the safety of others, particularly when VR-NO had knowledge of previous H2S and other chemical releases, and that serious injury or death was substantially certain from an exposure;" that VR-NO "knowingly practic[ed] inadequate training, hiring and retention;" that it willfully failed to address indications of a possible unauthorized and uncontrolled release; and that it "intentionally released chemicals without ascertaining the location of workers in the area[.]"[13] Plaintiff has *not* alleged, and there is no evidence to support a finding, that VR-NO consciously desired that plaintiff suffer injuries as a result of the chemical release, or even that VR-NO was "substantially certain" that injuries would result therefrom.[14] Critically,

---

[13]   R. Doc. 1-1 at 5-6.

[14]   Plaintiff's allegation that "serious injury or death was substantially certain from an exposure" is not the same as an allegation that serious injury was substantially certain to result from a chemical *release*.

employers are not liable under the intentional act exception for violations of safety standards. *Reeves*, 731 So. 2d at 211 (citations omitted). Nor does an employer's knowledge of past incidents of harm resulting from a particular workplace danger equate to a belief that injury was "inevitable, virtually sure or incapable of failing." *Snow v. Lenox Int'l*, 662 So. 2d 818, 821 (La. App. 2d Cir. 1995). Plaintiff's allegations are insufficient to bring his claim outside of the workers' compensation scheme, and as he has presented no evidence to support those allegations, certainly his claim cannot withstand defendant's motion for summary judgment.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.


New Orleans, Louisiana, this 31st day of July, 2012.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE